UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS LAMAR JAMES, JR., | No. C 10-4009 SI (pr) |
| Plaintiff, | **ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| HAYWARD POLICE DEPT.; et al., | |
| Defendants. | |

## INTRODUCTION

In this civil rights action under 42 U.S.C. §1983, Dennis Lamar James, Jr., complains that he was subjected to unreasonable searches, false arrests and excessive force by officers from the Hayward Police Department. For the reasons discussed below, defendants' unopposed motions for summary judgment will be granted and judgment will be entered against plaintiff.

## BACKGROUND

In his amended complaint, James alleged that he had been subjected to unreasonable searches, false arrests and excessive force on July 27, 2009 and February 17, 2010, by members of the Hayward Police Department ("HPD"): Green, Javier, Puga and McGilboney. The Court found cognizable James' claims against defendant Hayward police chief Ron Ace for the unconstitutional acts of his subordinates which were allegedly done "with the knowledge and consent... or were thereafter approved by" defendant Ace. Amended Complaint, p. 5. Furthermore, the Court found that the allegations, liberally construed, were sufficient to state a municipal liability claim against the City of Hayward, the HPD, and the County of Alameda for

the Fourth Amendment and malicious prosecution claims.

The following facts are undisputed, unless otherwise noted:

A. July 27, 2009 Incident

According to the amended complaint, James was walking in the city of Hayward with two African American citizens when he was detained by HPD officers. James alleged that once he was detained, he was hit on the head with a baton by officer Green, and then physically assaulted by officers Green and Javier with batons, hands and feet. James was injured. Amended Complaint, p. 4-5. James was arrested and searched, and booked at the Hayward City Jail. James alleges that defendants did not have a warrant to search or arrest him. Id. James was charged with a violation of California Health & Safety Code § 11351 (possession or purchase for sale of a controlled substance). Id. at 6. The district attorney's office filed charges against James. James claims that he later filed a motion to suppress which was granted, and that he was "discharged." Id.

On the day of the incident, officers Javier and Green were patrolling the area near 27505 Tampa Avenue in the City of Hayward, which is documented by police reports and citizens complaints as an area where illegal narcotics, such as cocaine, methamphetamine, and marijuana, are commonly sold and used. Javier Decl., ¶ 4; Green Decl., ¶ 3. Defendant Javier had observed numerous hand-to-hand illegal narcotics transactions in this area. Javier Decl., ¶ 3.

At about 10:30 p.m., when James claims he was walking in this area with two African American citizens, defendants Javier and Green observed James speak to a male suspect ("S2"). James used his right hand to place a small object that he had cupped into the hand of S2. As S2 received the item from James in his left hand, S2 used his right hand to pass an item to James. Based on their training and experience with respect to illegal narcotics transactions, the location, and their observations, Javier and Green believed that James and S2 had engaged in a hand-to-hand illegal narcotics transaction. Javier Decl., ¶¶ 2-5; Green Decl., ¶¶ 2-4.

Defendants exited the patrol car, and commanded the suspects to stop. James, his companions, and S2 ran in opposite directions. Because James was the person who initiated the

2

observed hand-to-hand transaction and was the person most likely holding illegal narcotics, defendants pursued James. Defendants repeatedly told James to stop fleeing. As James continued to flee on foot, he looked back to check the progress of the officers in pursuit, lost his balance, and fell face first on the street. Javier Decl., ¶¶ 9-11; Green Decl., ¶¶ 5-7.

As James attempted to get up, defendants moved in to physically control him. James hid his arms underneath his body in an effort to thwart the defendants' efforts to take him into custody. When defendants commanded James to give them his hands, he did not comply and instead flailed his body. Defendants delivered knee strikes to James' body to cause him to move his arms out from underneath his body. When James moved his arms from underneath his body, defendants got a hold of his hands and then pinned his head area and upper body to prevent any further flailing. Ultimately, they secured James in handcuffs. Javier Decl., ¶¶ 2-16; Green Decl., ¶¶ 2-12.

Defendants did not have a warrant to search or arrest James. However, they determined that James was on active parole related to a felony conviction for a violation of California Penal Code § 245(A)(2) (assault with a deadly weapon (firearm) on a person). Green Decl., ¶ 11. Incident to his arrest, defendants searched James and recovered a .20 gram (gross weight) rock of cocaine, and $524.00 in cash. Javier Decl., ¶¶ 14-16; Green Decl., ¶¶ 10-12.

James was taken into custody for violations of California Penal Code § 3056 (violation of parole), § 148 (resisting, delaying, or obstructing officer), and Health & Safety Code § 11350 (possession of controlled substance) and § 11352 (transportation/sale of controlled substance). Javier Decl., ¶¶ 15-16; Green Decl., ¶¶ 11-12. James was ultimately charged with a felony count for violation of Health & Safety Code § 11350(a) with an enhancement for the following: (1) a first prior conviction on January 23, 2005 for a felony violation of Penal Code § 12021(a)(1) (possession of firearm by a felon); and (2) a second prior conviction on January 24, 2005 for felony violation of Penal Code § 245(a)(2) (assault with a firearm). Hom Decl.

B.     February 17, 2010 Incident

On February 17, 2010, James was in a car that was pulled over by Hayward police officers Puga and McGilboney for a traffic stop. According to the amended complaint,

3

defendants had no search or arrest warrant, and they "stopped, detained and physically assualted" James solely because of his race. Id. at 7-8. James alleged that he was assaulted "with Taser gun, baton, and hands" until an ambulance was called to take him to the hospital. Id. at 8. James was arrested and charged with numerous violations, but he claims all charges were dismissed in or about May 2010.

At about 1:59 a.m. on February 17, 2010, James was in a car that was pulled over by defendants Puga and McGilboney for a traffic stop, because the car displayed an expired vehicle registration tag. Puga Decl., ¶¶ 2-4. As Puga approached the vehicle, he recognized the odor of marijuana emanating from the car, which was driven by Annie Shears. Shears admitted to Puga that they had just smoked marijuana and the remains were in the ashtray. Puga did a record check of James which revealed that James had prior arrests for guns, drugs, and resisting arrest. Id. at ¶¶ 5-7. James told Puga that he was on active California Department of Corrections parole. After James complied with Puga's request to step out of the car to perform a parole search, McGilboney observed what appeared to be a baggy of powder cocaine, in plain view, on the car seat where James had been seated. McGilboney signaled to Puga to handcuff James. After Puga had clasped only one handcuff, the unsearched James suddenly jumped back into the unsearched car. James grabbed the baggy of powder cocaine and placed it in his mouth. Puga commanded James to spit out the baggy, but James did not comply. Puga used pressure on James' temporomandibular nerve ("TMJ") to prevent James from swallowing the baggy. James physically struggled with the officers, swallowed the baggy and bit Puga. McGilboney commanded James to stop fighting but he did not comply. McGilboney issued a warning and deployed his taser on James using a drive stun mode, but the taser had no physical effect on James, who continued to disregard the defendants' commands to stop fighting. McGilboney pulled James out of the car. Puga delivered knee strikes in an attempt to gain physical control of James. McGilboney delivered baton strikes to James. Ultimately, defendants' use of pain compliance techniques allowed them to successfully complete handcuffing James. Puga Decl., ¶¶ 2-34; McGilboney Decl., ¶¶ 2-20.

James was charged with a felony count for violating Penal Code § 69 (resisting an

4

officer), a misdemeanor count for violating Penal Code § 135 (destroying evidence), and a misdemeanor count for violating Penal Code § 243(b) (battery on officer) with enhancements for the following: (1) a first prior conviction on January 24, 2005 for a felony violation of Penal Code § 245(a)(2) (assault with a firearm); (2) a second prior conviction on January 23, 2005 for a felony violation of Penal Code § 12021(a) (possession of firearm by a felon); (3) a third prior conviction on January 23, 2005 for a felony violation of Penal Code § 245(b) (assault with a semiautomatic firearm); (4) a fourth prior conviction on October 22, 1999 for a felony violation of Arizona Penal Code § 187(a) (murder); (5) a fifth prior conviction on October 22, 1999 for a felony violation of Arizona Health & Safety Code § 11377(a) (possession of controlled substance); and (6) a sixth prior conviction on May 4, 1993 for a felony violation of Arizona Health & Safety Code § 11350(a) (possession of controlled substance). Hom Decl.; Scheingart Decl.

## VENUE AND JURISDICTION

Venue is proper in the Northern District of California under 28 U.S.C. § 1391 because the events or omissions giving rise to Johnson's complaint occurred in Alameda County, located in the Northern District. See 28 U.S.C. §§ 84, 1391(b). This Court has federal question jurisdiction over this action under 42 U.S.C. § 1983. See 28 U.S.C. § 1331.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the suit under governing law, and a

1 dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, as is the situation with defendants' challenge to the Fourth Amendment claim, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

Where, as is the situation with defendants' qualified immunity defense, the moving party bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. Smith, 965 F.2d 1532, 1536 (9th Cir. 1992). He must establish the absence of a genuine issue of fact on each issue material to his affirmative defense. Id. at 1537; see also Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. When the defendant-movant has come forward with this evidence, the burden shifts to the non-movant to set forth specific facts showing the existence of a genuine issue of fact on the defense.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Here, the amended complaint was not verified, and therefore will not be considered as evidence for purposes of deciding the motion.[1]

---

[1] James' amended complaint has only a very brief description of the incident and omits any mention of what James was doing when defendants used force on him. With the liberal construction that is required for pro se pleading, his allegations were sufficient to state a claim, but liberal construction does not work as a substitute for actual evidence when the case has

6

The court's function on a summary judgment motion is not to make credibility determinations nor to weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. Id. at 631.

**DISCUSSION**

A.   Unlawful Search and False Arrest Claims

The Fourth Amendment proscribes "unreasonable searches and seizures." U.S. Const. amend. IV; Allen v. City of Portland, 73 F.3d 232, 235 (9th Cir. 1995); Franklin v. Foxworth, 31 F.3d 873, 875 (9th Cir. 1994). The ultimate test of reasonableness requires the court to balance the governmental interest that justifies the intrusion and the level of intrusion into the privacy of the individual. Easyriders Freedom F.I.G.H.T. v. Hannigan, 92 F.3d 1486, 1496 (9th Cir. 1996). State law is irrelevant in this calculus. See Virginia v. Moore, 553 U.S. 164, 172 (2008) (no 4th Amendment violation where arrest was based on probable cause, but state law called for issuance of a citation rather than arresting the suspect); see, e.g., Edgerly v. City and County of San Francisco, 599 F.3d 946, 956 (9th Cir. 2010) (§ 1983 wrongful arrest claim properly rejected because arrest was constitutional in that probable cause existed, even though state law required cite-and-release rather than a custodial arrest under the circumstances); id. at 957 n.15 (constitutionality of search, like an arrest, is based on probable cause and without regard to state law restrictions).

In order to claim the protection of the Fourth Amendment, one must "demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; i.e., one which has 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and

---

progressed to the summary judgment stage.

7

permitted by society.'" Minnesota v. Carter, 525 U.S. 83, 88 (1998) (citation omitted).

The existence of probable cause is a major factor in determining the reasonableness of a search or seizure. See Allen, 73 F.3d at 235 (warrantless arrest); United States v. Dunn, 935 F.2d 1053, 1057 (9th Cir.) (warrantless search of automobile), cert. denied, 502 U.S. 950 (1991); see, e.g., Wyoming v. Houghton, 526 U.S. 295, 302 (1999) (officers with probable cause to search a car may inspect passengers' belongings in the car that are capable of concealing the object of the search). Probable cause means "more than a bare suspicion; it exists when the officer's knowledge of reasonably trustworthy information is sufficient to warrant a prudent person to believe that an offense has been or is being committed." Graves v. City of Coeur D'Alene, 339 F.3d 828, 841 (9th Cir. 2003) (citing Brinegar v. United States, 338 U.S. 160, 175-76 (1949)). Probable cause also exists when the facts available to the officer would "warrant a man of reasonable caution in the belief . . . that certain items may be contraband or stolen property or useful as evidence of a crime"; it does not demand any showing that such a belief be correct or more likely true than false. Dunn, 935 F.2d at 1057 (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)) (internal citation and quotation marks omitted). Cf. United States v. Knights, 534 U.S. 112, 119-22 (2001) (no Fourth Amendment violation in case of warrantless search of probationer's residence, where search was based only on reasonable suspicion but not probable cause). Sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment. Meek, 366 F.3d at 713 (citing Illinois v. Rodriguez, 497 U.S. 177, 185 (1990)) (search warrant); see also United States v. Brooks, 367 F.3d 1128, 1134 (9th Cir. 2004) (finding probable cause existed for officer's entry into hotel room based upon expressed concerns of the guest next door in 911 call, which were corroborated by defendant's statements and the facts observed by the officer).

The Fourth Amendment also requires that an arrest be supported by probable cause. Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001); Michigan v. Summers, 452 U.S. 692, 700 (1981) (an arrest is unlawful unless there is probable cause to support it). An arrest is supported by probable cause if, under the totality of the circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the

defendant had committed a crime. Luchtel v. Hagemann, 623 F.3d 975, 980 (9th Cir. 2010); Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004); Grant v. City of Long Beach, 315 F.3d 1081, 1085 (9th Cir. 2002). "[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983).

### 1.  July 27, 2009 Incident

Defendants first argue that James was not subjected to an unlawful seizure because he fled the scene. Mot. at 10. They also assert that even if the Court concludes that James was detained, the detention was justified because the defendants had a reasonable suspicion that James was involved in criminal activity. Id.

The undisputed evidence shows that on the day of the incident, defendants Javier and Green were patrolling an area that was documented by police reports and citizens complaints as an area where illegal narcotics, such as cocaine, methamphetamine, and marijuana, are commonly sold and used. Javier Decl., ¶ 4; Green Decl., ¶ 3. Furthermore, defendant Javier had personally observed numerous hand-to-hand illegal narcotics transactions in that area. Javier Decl., ¶ 3. Defendants Javier and Green observed James speak to a male suspect and engage in a surreptitious exchange of items. See supra at 2. Based on their training and experience with respect to illegal narcotics transactions, the location, and their observations, defendants had a reasonable suspicion to investigate a potential hand-to-hand illegal narcotics transaction. Mot. at 12.

Furthermore, James' refusal to obey the officers' orders to stop when he fled the scene and continued resistance after he fell to the ground constituted probable cause for violating state regulations prohibiting physical resistance, hiding, or running away from a police officer. See Cal. Penal Code §§ 69, 148. In addition, the fact that defendants had personally witnessed what to a prudent person would have appeared to be an illicit narcotics sale and then James' immediate flight was sufficient for the defendants to believe that an offense had been committed. See Graves, 339 F.3d at 841. Lastly, since the arrest was based on probable cause, the search

9

1 of James incident to his arrest was also valid. See Chimel v. California, 395 U.S. 752, 763
2 (1969).

3 James has failed to establish a triable issue of fact as to whether he was subjected to an
4 unreasonable search and seizure and false arrest by defendants. Defendants are entitled to
5 judgment as a matter of law on this Fourth Amendment claim.

### 2. February 17, 2010 Incident

According to Defendants, under California law an expired registration tag on the rear license plate of a car gives police reasonable suspicion that the driver has violated California Vehicle Code §4000(a).[2] Mot. at 13. The undisputed evidence shows that defendants Puga and McGilboney made a lawful traffic stop of the car in which James was a passenger based on reasonable suspicion that the driver had failed to register the car and pay the required fees as indicated by the expired vehicle registration tag. See supra at 4.

Furthermore, the Ninth Circuit has held that detection of marijuana odor emanating from a vehicle is sufficient in certain "investigatory" situations to give rise to probable cause. See United States v. Garcia-Rodriguez, 558 F.2d 956, 964 (9th Cir. 1977); United States v. Russell, 546 F.2d 839, 840(9th Cir. 1976); United States v, Laird, 511 F.2d 1039, 1039-40 (9th Cir. 1975); United States v. Ojeda-Rodriguez, 502 F.2d 560-561 (9th Cir. 1974). Here, the undisputed evidence shows that as defendant Puga approached the vehicle, he recognized the odor of marijuana emanating from the car. See supra at 4. Moreover, the driver, Annie Shears, admitted to Puga that they had just smoked marijuana, the remains of which were in the ashtray. Id. These facts were sufficient to establish probable cause for the defendants to perform a warrantless search of the car based on their believe that the vehicle contained contraband. See United States v. Ross, 456 U.S. 798, 824 (1925). However, even before performing a search,

---

[2] California Vehicle Code §4000 (a) requires that all vehicles being driven, parked, moved or left standing upon a highway, or in an off street parking facility must be registered and fees paid to DMV. California Department of Motor Vehicles, http://www.dmv.ca.gov/dl/authority.htm (last visited May 1, 2012).

1 Puga did a record check of James which revealed that James had prior arrests for guns, drugs, 2 and resisting arrest. See supra at 4. When questioned, James admitted to Puga that he was on 3 active California Department of Corrections parole. Id. This fact alone was sufficient to permit 4 defendants to perform a search of James pursuant to California Penal Code § 3067(a).[3] Lastly, 5 James did not object when Puga requested that he step out the car to perform a parole search, and 6 he did in fact proceed to do so. See supra at 4. It was then that McGilboney observed what 7 appeared to be a baggy of powder cocaine, in plain view, on the car seat where James had been 8 seated. Id. Based on this observation and James' parole status, defendants had probable cause 9 to believe that a criminal activity was taking place. See Graves, 339 F.3d at 841. Accordingly, 10 defendants did not violate James' Fourth Amendment right against unreasonable search and 11 seizure because their search of his person and the vehicle were based on probable cause. Nor 12 was the arrest unlawful because it was also supported by probable cause. See Luchtel, 623 F.3d 13 at 980.

14 James has failed to establish a triable issue of fact as to whether he was subjected to an 15 unreasonable search and seizure and false arrest by defendants. Defendants are entitled to 16 judgment as a matter of law on this Fourth Amendment claim.

18 B.   Excessive Force Claim

19 The constitutional right at issue when it is alleged that a law enforcement officer used 20 excessive force in the course of an arrest or other seizure is the Fourth Amendment right to be 21 free from "unreasonable . . . seizures." U.S. Const. amend. IV; see Graham v. Connor, 490 U.S. 22 386, 394 (1989). "Determining whether the force used to effect a particular seizure is reasonable 23 under the Fourth Amendment requires a careful balancing of the nature and quality of the 24 intrusion on the individual's Fourth Amendment interests against the countervailing

---

[3] California Penal Code § 3067(a) provides the following: "Any inmate who is eligible for release on parole pursuant to this chapter or postrelease community supervision pursuant to Title 2.05 (commencing with Section 3450) of Part 3 shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause."

United States District Court
For the Northern District of California

governmental interests at stake." Id. at 396 (citations and internal quotation marks omitted). Because the reasonableness standard is not capable of precise definition or mechanical application, "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. Courts also consider the "quantum of force used to arrest the plaintiff, [citation], the availability of alternative methods of capturing or detaining the suspect, [citation], and the plaintiff's mental and emotional state [citation]." Luchtel v. Hagemann, 623 F.3d 975, 980 (9th Cir. 2010).

The reasonableness inquiry in excessive force cases is an objective one, the question being whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation and without the "20/20 vision of hindsight." Graham, 490 U.S. at 396. This analysis applies to any arrest situation where force is used, whether it involves physical restraint, use of a baton, use of a gun, or use of a dog. Mendoza v. Block, 27 F.3d 1357, 1362 (9th Cir. 1994).

### 1. July 27, 2009 Incident

Defendants Green and Javier acknowledge that they did use force on James, but assert that the force used was reasonable to effect the arrest of James. Under the totality of circumstances, and viewing the evidence in the light most favorable to James, the defendants' use of force – delivering knee strikes to James' body and pinning his head and upper body to the ground -- in arresting him was reasonable. Considering the various factors identified by Graham, the Court concludes as a matter of law that the force used was not excessive.

Severity of the crime: James' offense was somewhat serious. Defendants initially had reasonable suspicion to believe James was involved in an illegal narcotics sale. When they approached him to investigate, James evaded questioning by flight. He continued to ignore the defendants' orders to stop. When he fell on the ground, James continued to resist officers as they tried to handcuff him. James was taken into custody for violating his parole, resisting an

12

officer, possession of a controlled substance, and the sale of a controlled substance.

<u>Immediacy of threat to the safety of officers or others</u>: It appears that the immediacy of a threat to the safety of officers or others was low as James initially fled from the scene.

<u>Active resistance to arrest</u>: The undisputed evidence shows that James was actively resisting arrest by initially taking flight, ignoring defendants' commands to give them his hands, and then physically struggling against being handcuffed.

<u>Quantum of force used</u>: The force used consisted of knee strikes to James' body and then pinning James to the ground while he was handcuffed. When James fell to the ground, he hid his arms underneath his body to avoid being handcuffed. When defendants commanded James to give them his hands, he did not comply and instead flailed his body. Defendants delivered knee strikes to James' body to cause him to move his arms out from underneath his body. When James moved his arms from underneath his body, defendants got a hold of his hands and then pinned his head area and upper body to prevent any further flailing.

<u>Injuries</u>: There were no allegations of injury from the alleged use of excessive force in the amended complaint, nor did James present any evidence by way of medical records to indicate that he suffered any injuries stemming from defendants' actions. See <u>Arpin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d 912, 922 (9th Cir. 2001) (allegations of injury without medical records or other evidence of injury insufficient to establish excessive force claim under 4th Amendment).

<u>Efforts to temper use of force</u>: The police officers attempted to temper the severity of their response by giving James oral commands to give them his hands. James did not comply and instead flailed his body. No force was used that was not preceded by and responsive to James' resistant behavior.

One might argue that there are alternative ways to deal with a resisting suspect. But that kind of leisurely second-guessing ignores the directive to analyze the force making "allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." <u>Graham</u>, 490 U.S. at 397. Doing so, this Court concludes

13

that no reasonable jury could find that defendants applied an excessive amount of force during the detention of James. See, e.g., Brooks v. City of Seattle, 599 F.3d 1018, 1030-31 (9th Cir. 2010) (officers entitled to judgment in case presenting a less-than-intermediate use of force (i.e., tasing a pregnant woman three times), which was "prefaced by warnings and other attempts to obtain compliance, against a suspect accused of a minor crime, but actively resisting arrest, out of police control, and posing some slight threat to officers"); Drummond v. City of Anaheim, 343 F.3d 1052, 1058-60 (9th Cir. 2003) (although some force was justified in restraining mentally ill individual so he could not injure himself or the officers, once he was handcuffed and lying on the ground without offering resistance, two officers who knelt on him pressed their weight against his torso and neck despite his pleas for air used constitutionally excessive force); Miller v. Clark County, 340 F.3d 959, 963-68 (9th Cir. 2003) (use of trained police dog to "bite and hold" suspect until officers arrived on the scene less than a minute later does not constitute unreasonable excessive force under 4th Amendment when suspect poses immediate threat to officers' safety, several attempts to arrest suspect with less forceful means are unsuccessful as a result of suspect's defiance, and use of police dog is well-suited to task of safely arresting suspect). James has failed to establish a triable issue of fact as to whether he was subjected to excessive force by defendants. Defendants are entitled to judgment as a matter of law on the Fourth Amendment claim.

### 2. February 17, 2010 Incident

Defendants Puga and McGilboney acknowledge that they used force on James, but contend that they used reasonable force to defend themselves and to obtain James' compliance. Under the totality of circumstances, and viewing the evidence in the light most favorable to James, the defendants' use of force – putting pressure on James' TMJ, tasing him, pulling him out of the car, and delivering knee and baton strikes -- in arresting him was reasonable. Again considering the various factors identified by Graham, the Court concludes as a matter of law that the force used was not excessive.

Severity of the crime: Although James' offense was not initially serious, the situation

quickly escalated. Defendants saw a baggy of powder cocaine in plain sight and attempted to investigate and secure James, who had a criminal history of resisting arrest. The situation escalated when James unexpectedly lunged back into the car before defendants had a chance to search him or the car. James fought against defendants' efforts to stop him from swallowing the evidence, going so far as to bite Puga. He continued to ignore the defendants' orders to stop fighting, and even the taser gun had no physical effect on him. Defendants were only able to successfully handcuff James after delivering knee strikes and baton strikes. James was ultimately charged with resisting an officer, destroying evidence, and battery on officer.

<u>Immediacy of threat to the safety of officers or others</u>: Given James' criminal history, he posed an immediate threat to the safety of the officers. When defendants checked James' history, they found that James had prior arrests for guns, drugs, and resisting arrest. It was therefore reasonable for the defendants to believe that the car potentially contained weapons such as a gun or other weapons of opportunity, and therefore expedient to remove him from the vehicle and search him. When James resisted thereafter, and even went so far as to bite Puga, the threat to officers significantly increased as James continued to disregard commands to stop fighting.

<u>Active resistance to arrest</u>: The undisputed evidence shows that James was actively resisting arrest when he lunged back into the car before defendants finished handcuffing him. He continued to resist as he destroyed evidence and bit Puga, all the while disregarding defendants' commands to stop fighting. James never stopped physically struggling until defendants managed to get him in handcuffs.

<u>Quantum of force used</u>: The force used consisted of pressure to James' TMJ, pulling him out of the car, tasing him, and then knee and baton strikes as they attempted to handcuff him. When defendants commanded James to stop fighting, he did not comply and instead continued to struggle against being handcuffed. McGilboney issued a warning before he used the taser on James, but the taser had no physical effect on James, who continued to disregard defendants' orders to stop fighting. After they pulled him from the car, defendants delivered knee strikes and baton strikes to gain physical control of James as they attempted to handcuff him. They stopped

using force as soon as they had successfully handcuffed him.

Injuries: Although James alleges that he was beaten until an ambulance was called and he was rushed to a hospital, James neither makes any specific allegations of injury nor presents any evidence by way of medical records to indicate that he suffered any injuries stemming from defendants' actions. See Arpin, 261 F.3d at 922.

Efforts to temper use of force: Defendants attempted to temper the severity of their response by giving James oral commands to stop fighting and warnings before using the taser gun. James did not comply and instead continued to struggle. No force was used that was not preceded by and responsive to James' resistant behavior.

James has failed to establish a triable issue of fact as to whether he was subjected to excessive force by defendants. Defendants are entitled to judgment as a matter of law on the Fourth Amendment claim.

C.  Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth a two-pronged test to determine whether qualified immunity exists. The threshold question is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. If no constitutional right was violated if the facts were as alleged, the inquiry ends and defendants prevail. See id. If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. . . . 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02 (quoting Anderson v. Creighton, 483 U.S. 635, 640

16

(1987)). Although Saucier required courts to address the questions in the particular sequence set out above, courts now have the discretion to decide which prong to address first, in light of the particular circumstances of each case. See Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

As shown in the preceding section, the evidence in the record does not establish a violation of James' Fourth Amendment rights. Defendants prevail on the first step of the Saucier analysis, so the Court need not proceed to the second step of the Saucier analysis. Defendants are entitled to judgment as a matter of law on the qualified immunity defense.

D.   Supervisor Liability

James claims that defendant Hayward police chief Ron Ace is liable for the unconstitutional acts of his subordinates which were allegedly done "with the knowledge and consent... or were thereafter approved by" defendant Ace. Amended Complaint, p. 5.

A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011); Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

As discussed above, the Court has found no violation of James' Fourth Amendment rights by HPD officers during the two incidents at issue. A supervisor cannot be held liable for wrongful conduct where there has been no wrongful conduct or constitutional violation by his subordinates. See Starr, 652 F.3d at 1207. Furthermore, there is no evidence in the record to indicate that defendant Ace personally participated in or directed the actions of defendants during the two incidents at issue. Accordingly, defendant Ace is entitled to judgment as a matter of law.

17

E.    Municipal Liability

James claims that the City of Hayward, the HPD, and the County of Alameda are liable for violating his Fourth Amendment right and for malicious prosecution.

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort, see Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978);[4] however, a city or county may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior, see Board of Cty. Comm'rs. of Bryan Cty. v. Brown, 520 U.S. 397, 403 (1997); Monell, 436 U.S. at 691; Fuller v. City of Oakland, 47 F.3d 1522, 1534 (9th Cir. 1995). To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation. See Plumeau v. School Dist. #40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997). Local government does not cause the alleged violation, and therefore is not liable under § 1983, if it does not have the power to remedy the alleged violation. See Estate of Brooks v. United States, 197 F.3d 1245, 1248-49 (9th Cir. 1999) (upholding dismissal of § 1983 excessive detention claim against county because under state statute county did not have power either to release federal detainee or bring him before federal judge).

1.    Fourth Amendment

James' Fourth Amendment claims against these defendants fail, first of all, because he cannot show the first element, i.e., that he was deprived of a constitutional right. See Plumeau, 130 F.3d at 438. As discussed above, the Court has found no violation of James' Fourth

---

[4]Local governing bodies therefore may be sued directly under § 1983 for monetary, declaratory or injunctive relief for the violation of federal rights. See Monell, 436 U.S. at 690. They are absolutely immune from liability for punitive damages under § 1983, however. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).

Amendment rights by HPD officers during the two incidents at issue. Secondly, James fails to show that the officers acted pursuant to a custom, policy or practice of these municipal defendants which resulted in a constitutional deprivation. Id. James claims that the alleged constitutional violations were based on "racial profiling that the City of Hayward, Hayward Police Department, County of Alameda supervisors have done nothing to stop." Amended Complaint, p. 8. However, the undisputed evidence shows that the detention and arrest of James on the two separate occasions were each based on probable cause of criminal activity and not on James' race. Without evidence to the contrary, James' allegation is conclusory.

Furthermore, defendant County of Alameda argues in their separate motion for summary judgment that James makes no specific factual allegation against the County. Mot. at 3. The County argues that James' sole allegation is that the County "may have employed [the] police officers who are the subject of this Amended Complaint" and that "the Hayward Police Department is a subdivision and/or department of defendant, County of Alameda." Amended Complaint, p. 3. The County submits evidence indicating that the City of Hayward is not a subdivision of the County, and that the HPD is a department of the City of Hayward, and thereby, none of the City's or HPD's employees are County employees. Mot. at 5-6. Be that as it may, even assuming that the HPD officers were County and City employees, James has failed to show that they violated his constitutional rights. Accordingly, there can be no liability by the County, or the City of Hayward and HPD where there has been no wrongdoing by its employees. Defendants are entitled to summary judgment as a matter of law.

### 2. Malicious Prosecution

Malicious prosecution does not constitute a deprivation of liberty without due process of law and is not a federal constitutional tort if process is available within the state judicial system to remedy such wrongs. See Usher v. City of Los Angeles, 828 F.2d 556, 561-62 (9th Cir. 1987). However, there is an exception to this general rule: where a prosecution is conducted with malice and without probable cause, and with the intent to deprive a person of equal protection of the laws or another specific constitutional right, a due process claim may be stated.

19

See Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995) (citing Bretz v. Kelman, 773 F.2d 1026, 1031 (9th Cir. 1985) (en banc), and Cline v. Brusett, 661 F.2d 108, 110-12 (9th Cir. 1981)); Usher, 828 F.2d at 561-62.

James' malicious prosecution claim fails because the undisputed evidence shows that defendants had probable cause to arrest James on the two incidents at issue, and there was sufficient evidence to support the prosecutions stemming from the two incidents. See Smith v. Almada, 640 F.3d 931, 938 (9th Cir. 2011) (upholding district court's grant of summary judgment on malicious prosecution claim because probable cause existed to arrest and prosecute plaintiff for arson); Lassiter v. City of Bremerton, 556 F.3d 1049, 1054-55 (9th Cir. 2009) (no need to decide whether there was malice because probable cause existed and probable cause is an absolute defense to malicious prosecution claim). Accordingly, defendants are entitled to summary judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are GRANTED. (Docket nos. 27 & 28.) Defendants are entitled to judgment as a matter of law on the merits of the Fourth Amendment and malicious prosecution claims and on their defense of qualified immunity. Judgment will be entered in all defendants' favor and against plaintiff. The clerk will close the file.

IT IS SO ORDERED.

Dated: May 23, 2012

_____
SUSAN ILLSTON
United States District Judge